John Henry MOORE, Plaintiff-Respondent,

v.

TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation, Defendant-Appellant.

No. 46366.

Supreme Court of Missouri,

Division No. 1.

April 14, 1958.

Motion for Rehearing or to Transfer to Court en Banc Denied May 12, 1958.

Robert C. Ely, St. Louis, for appellant.

George E. Helfers and Roberts P. Elam, St. Louis, for respondent.

WESTHUES, Judge.

On September 18, 1955, plaintiff John Henry Moore was, as he had been for about ten years, in the employ of the defendant Terminal Railroad Association of St. Louis as a mail and baggage handler. About 10:-30 a. m., on that day, he was injured while he was pulling an empty flat wagon along the concrete platform between tracks 4 and 5 where he was to meet a Cotton Belt train at Union Station in St. Louis, Missouri. Plaintiff sustained his injuries when the Cotton Belt train backing into the Union Station came in contact with the flat wagon plaintiff was pulling in a northwesterly direction, causing him to be pushed against a Pennsylvania Railroad train standing on track 4 west of track 5. Moore filed this suit asking damages for his injuries. A jury trial resulted in a verdict in his favor for $10,000. From the judgment entered, the defendant appealed.

Defendant's principal point briefed is that the evidence is insufficient to show any negligence on the part of the railroad. Plaintiff's claim must be governed by the Federal Employers' Liability Act, 45 U.S. C. A. § 51 et seq.

The case was submitted to a jury on the theory that defendant failed to furnish plaintiff a reasonably safe place to work. The question of whether defendant was negligent was submitted as follows:

" * * * and if you further find that at the time of said occurrence and injury to plaintiff, said platform was so overcrowded and congested with tractors, bull wagons, flat wagons and similar vehicles, used by defendant for the hauling of mail, express and baggage, if you so find, and that said platform and its parts and appliances, and said flat wagon being pulled by plaintiff, were such, by reason of their size, type of construction and arrangement, if you so find, as to make it likely that said flat wagon being pulled by plaintiff along said platform would be struck by trains or cars moving over and along the tracks adjacent to said platform; and if you further find that defendant required plaintiff to work, and pull the said flat wagon being pulled by him, on said platform under the circumstances aforesaid (if you find them to be the circumstances), and that in so doing, if you so find, defendant failed to exercise ordinary care and was guilty of negligence; and if you further find that the aforesaid occurrence and injury to plaintiff directly resulted, in whole or in part, from the aforesaid negligence of defendant (if you find defendant was negligent as aforesaid), then your verdict herein must be in favor of the plaintiff, * * *."

For a better understanding of the situation, we are including herein a picture of plaintiff's Exhibit 8 which is a plat of the scene and is drawn to scale:

Picture of Plaintiff's Exhibit 8, A Plat

So there may be no confusion in directions, we note here that track 3 (shown at left on plat) runs north and south and is west of tracks 4 and 5 between which is the platform in question. Track 4 shows a "cut-out" of only one car of the Pennsylvania train standing thereon. (There were other cars not shown.) On track 5 are "cut-outs" of Cotton Belt cars moving north. The platform is 14′ 1⅜″ wide. The north elevator is at the south end of the plat. The small circles in the center of the platform indicate the location of posts (14″ in diameter) which are 30′ apart.

They support a roof over the platform. The two "cut-outs" at top right are stationary bull wagons. The two "cut-outs" at top left on west side of the platform are flat wagons moving north. The single "cut-out" on angle is the flat wagon being pulled by plaintiff as the rear end thereof turned into the moving Cotton Belt train. The remaining "cut-out" shown nearest the north elevator represents a flat wagon being pulled north by a witness Robinson.

We also include herein defendant's Exhibit A which is a photograph of the scene without trains on either track 4 or track 5:

Defendant's Exhibit A

The picture was taken looking south. A flat wagon such as plaintiff was pulling when injured may be seen standing on the platform. There was evidence that there may be a slight overhang of trains upon the platform adjacent thereto. However, plaintiff's plat indicates that the cars shown on the plat are flush with the edge of the platform and that the overhang, if any, is insignificant.

A flat wagon, such as plaintiff was using, is 15′ long and 44″ wide when measured from "axle to axle" of its two large center wheels. This flat wagon has one small wheel at each end thereof. When stationary, the wagon rests on one of these small wheels. It has a handle bar at each end. It pivots on the two large center wheels when it is turned so the ends swing in opposite directions. The bull wagons shown on the plat, as is obvious, are shorter than the flat wagons, have four wheels and a tongue, and are drawn either by hand or by small tractor. The two here involved had a tractor (not shown on plat) attached at the north.

Plaintiff testified that he with his wagon came up to the platform from the subbasement by way of an elevator some distance south of the elevator marked on the plat "north elevator"; that he pulled his wagon north along the east side of the platform and when he was at the north elevator, the first car (actually the rear end) of the Cotton Belt train was passing him as it backed into Union Station on track 5; that he continued on north and after passing the second post north of the north elevator, he turned to the west intending to bypass the two bull wagons standing on the east side of the platform; that while he was turning, the back end of the wagon came in contact with the moving train on track 5; that the moving train pushed him and the front end of the wagon against the train standing on track 4 to the west, causing him to be seriously injured. The bull wagons had been placed where shown on the plat for the purpose of being loaded with milk to be taken from the Cotton Belt train.

All of the flat wagons shown on the plat were in motion at the time, being drawn by hand. They were intended to be taken north of the bull wagons for the purpose of being loaded with mail and baggage from the Cotton Belt train. Plaintiff testified that another reason for his turning to the west to bypass the bull wagons was "Well, I didn't feel very safe with that Cotton Belt running along there beside me and I wanted to get out of the way of it."

On cross-examination, plaintiff testified as follows:

"Q. Isn't it a fact that what really happened is that you didn't know just how close the south end of your truck was to that train? A. Well, I did think I was turning safely, which I tried, and if it hadn't been for this wagon in front of me I could have made it easy.

"Q. What wagon was that? A. This flat here in front.

"Q. If it hadn't been for that you could have made what easily? A. I could have made it in there and got my wagon in the clear easy.

"Q. You could have gotten in the clear easily? A. Yes, sir.

"Q. And that's what you were trying to do? A. Yes, sir, that is what I was trying to do.

"Q. All right. A. I didn't feel very safe with that train running along beside me."

The flat wagon which plaintiff was referring to is the one shown on the west side of the platform and north of the one in a crisscross position which plaintiff was pulling. This flat wagon ahead of plaintiff's was moving north at the time. Plaintiff did not intend to pass it. In fact, he could not have done so. We do not see how this wagon in any way interfered with the operation of the plaintiff and his wagon. This wagon was moving north and, as shown

on the plat, it was some distance ahead of plaintiff. All plaintiff needed to do was to follow it. That wagon ahead was not in plaintiff's way. In what manner was the defendant negligent? Can it be said that a jury could be justified in finding that the platform, as shown by the plat, was overcrowded? We think not. Could a jury find that defendant was negligent in requiring these baggage and mail handlers to move their wagons toward the point where they were to be loaded with baggage while trains were moving on adjacent tracks? We think not. Plaintiff testified that if it had not been for the wagon ahead "I could have made it in there and got my wagon in the clear easily." As noted above, and the plat conclusively shows, the wagon ahead could not have caused plaintiff to turn his wagon so as to make contact with the train on track 5. The cause of the contact between the flat wagon and the train was plaintiff's inadvertence.

■ Plaintiff has cited many cases to sustain his contention that the evidence is sufficient to sustain a finding of negligence on the part of the defendant. We shall refer to a number of these to demonstrate that the courts of this state and the Supreme Court of the United States, while liberal to plaintiffs in cases under the Federal Employers' Liability Act, nevertheless hold that a judgment for a plaintiff must be supported by evidence which justifies a finding of negligence. A verdict cannot be sustained on mere speculation and conjecture. Plaintiff, in his brief, says, "The evidence, when viewed in the light most favorable to plaintiff, as it must be, is amply sufficient to sustain the jury's finding that the defendant violated its duty to plaintiff to furnish him with a reasonably safe environment in his work for defendant. It was the function of the jury to determine which of the facts in evidence should be accepted, and what reasonable inferences should be drawn therefrom (even if 'a measure of speculation and conjecture is required'), in determining whether negligence of the defendant played any part, however small, in

plaintiff's injury." The quotation in plaintiff's statement, "(even if 'a measure of speculation and conjecture is required')," taken from an opinion by Justice Murphy in the case of Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, loc. cit. 744(4–6), 90 L.Ed. 916, was referred to in Wiser v. Missouri Pacific R. Co., Mo., 301 S.W.2d 37, loc. cit. 44(6, 7), and in Winters v. Terminal R. Ass'n of St. Louis, 363 Mo. 606, 252 S.W.2d 380, loc. cit. 384(6).

In the Wiser and Winters cases cited by plaintiff, there was evidence from which negligence could be inferred. In the Wiser case, the plaintiff testified that while he was inspecting railroad cars, he slipped and fell over a rock imbedded in ballast on the track. In the Winters case, the plaintiff's hand was mashed as he was pulling a baggage truck when another such truck suddenly ran against plaintiff.

■ In the case now before us, none of the other wagons on the platform made contact with plaintiff. Plaintiff does not claim that there was anything unusual about the Cotton Belt train. It was plaintiff's act of turning his flat wagon too sharply that caused contact with the train. Plaintiff's plat indicates that it was not necessary for plaintiff to have turned his wagon as sharply as he did.

In the Winters case, supra, 252 S.W.2d loc. cit. 384(4, 5), it is stated that "But the burden is upon the plaintiff to present probative evidence of facts from which negligence and proximate cause may be reasonably inferred." The evidence in the case before us not only does not justify an inference of negligence on the part of the defendant but in our opinion disproves any such negligence.

Before concluding this opinion, we shall refer to a few of the other cases cited by plaintiff. In Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493, the United States Supreme Court pointed out that Rogers, a section-gang laborer, according to instruction stopped his weed burning to inspect a passing train for hot-

boxes and slipped and fell while retreating from flames fanned by the passing train. The court held that a jury could find that the employer should have been aware that the employee would suffer an injury under such conditions. The court further pointed out that Rogers slipped on gravel which had negligently been left on the surface of a culvert. The opinion in the Rogers case by this court, after remand from the United States Supreme Court, may be found at Rogers v. Thompson, 308 S.W.2d 688.

In Ellis v. Union Pacific R. Co., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572, a member of a switching crew was injured when a car moved past him on a curve and pinned the upper part of his body against a building. The clearance between the car and the building was insufficient.

In Bailey v. Central Vermont Ry., Inc., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444, a railroad workman fell to his death when using a wrench to open the doors of a hopper car. The car had been placed on a bridge. It was shown that the car could have been placed near the bridge on level ground and there opened. The court held that it was for a jury to determine whether the car had been negligently so placed as to render the place unsafe for the workman.

The rule followed in these Federal Employers' Liability cases is well stated in the Ellis case, supra, 67 S.Ct. loc. cit. 600 (2, 3): "The Act does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur. And that negligence must be 'in whole or in part' the cause of the injury."

Since we have concluded that the evidence in this case does not show negligence on the part of the defendant, we need not consider other points briefed.

The judgment is reversed.

All concur.