Leonard W. BEARD, Plaintiff-Respondent,

v.

RAILWAY EXPRESS AGENCY, INC., and Missouri Pacific Railroad Company, Defendants-Appellants.

No. 46877.

Supreme Court of Missouri,

Division No. 1.

April 13, 1959.

Motion for Rehearing or to Transfer to Court en Banc Denied May 11, 1959.

Gentry, Bryant & Sheppard, Arnot L. Sheppard, St. Louis, for appellants.

Rexford H. Caruthers, Shulamith Simon, Husch, Eppenberger, Donohue, Elson & Jones, St. Louis, Edward Fredrickson, Haley & Fredrickson, St. Louis, for respondent.

VAN OSDOL, Commissioner.

Plaintiff Leonard W. Beard instituted this action against Railway Express Agency, Inc., based on common law negligence, and against defendant Missouri Pacific Railroad Company under the Federal Employers' Liability Act (45 U.S.C.A. § 51 et seq.) for personal injuries sustained when plaintiff was on duty as a carman at the Union Station at Little Rock, Arkansas. A jury returned a verdict in favor of plaintiff and against both defendants in the amount of $68,000. The trial court conditionally required a remittitur of $20,000 and, upon plaintiff's compliance, judgment was entered for plaintiff and against both defendants for $48,000. Defendants have appealed.

Plaintiff had submitted his case against defendant Express Agency on the theory of negligence in moving a tractor-drawn train of express wagons along the platform at the station in "such close proximity" to a stationary and unattended baggage wagon at or near which plaintiff was standing as to cause the train of wagons, or one wagon thereof, to collide with the stationary wagon and cause it to move and strike and injure plaintiff; and against defendant Railroad Company on the theory of negligence in failing to exercise ordinary care to provide plaintiff with a reasonably safe place in which to work.

Defendants-appellants contend error of the trial court (1) in denying defendants' challenges for cause of eleven veniremen. (2) and (3) Error in giving plaintiff's verdict-directing Instructions Nos. 1 and 2 respectively submitting negligence of defendant Express Agency and defendant Railroad Company, and in giving plaintiff's Instruction No. 8 on the measure of damages. Several arguments are presented in urging error in giving the instructions (Nos. 1 and 2) including the arguments that they were broader than the pleadings and the evidence, and that the evidence was insufficient to support submissions of defendants' negligence, with the corollary that plaintiff failed to make out a submissible case against either defendant. (4) Error in refusing to declare a mistrial because of asserted improper cross-examination of a witness for defendants. (5) Error in refusing to give instructions tendered in defendants' behalf. (6) Error in refusing to order a mistrial because of asserted inflammatory and prejudicial argument on the part of plaintiff's counsel. And it is further contended (7) that the award (after remittitur in the trial court), $48,000, was excessive.

The north-south railroad tracks in the Little Rock yards approach the Little Rock station from the north, and passenger trains move and come to a stop alongside concrete platforms to discharge and receive passengers, express and baggage. Track No.

6 lies along the east side of the platform on which plaintiff was standing when injured, and track No. 7 lies along the west side of that platform. The concrete platform is at ground level and is 18 or 20 feet in width, and aligned down the center thereof are square posts or columns at intervals of approximately 20 feet, which posts support a long canopy designed to protect passengers from inclement weather as they walk along the platform in going to and coming from trains and to shelter employees who work on the platform. Steps leading up to the station-floor level are at or near the southerly end of the platform.

Express wagons, used by defendant Express Agency and baggage wagons used by defendant Railroad Company on and along the platform in moving express packages and baggage, are of similar construction and size, maybe three feet high, four feet wide and ten feet long.

There was evidence tending to show that at approximately twelve o'clock noon, August 20, 1955, plaintiff, the employee of defendant Railroad Company, had come to the platform to await the arrival of train No. 116. It was plaintiff's duty to inspect the brakes and journal boxes of the incoming train. In awaiting the arrival of the train, plaintiff walked to a baggage wagon standing unattended between the second and third post north of the passenger stairway and stood facing southwardly at the north end of the wagon with his hands, flashlight, hammer and gloves resting on the wagon platform. A fellow employee, McMullan, was standing southeast of plaintiff about midway of the east side of the wagon; and another employee, Combs, was standing or sitting at or near the post or column south of the wagon. While plaintiff was standing in the position stated, an employee of defendant Express Agency driving a tractor pulling several express wagons approached from the north. The tractor-drawn wagons were moving along the west side of the platform. As the wagons came along the west side of the

stationary baggage wagon at which plaintiff was standing, a wagon of the moving wagon train came into contact with the wagon at which plaintiff was standing and caused it to "spin" counterclockwise so that the northeast corner of it struck plaintiff a little below the waistline at the back just as he was turning to his left, counterclockwise, in response to a warning call—"Look out"—from his fellow employee Combs. It was a "hard lick," and knocked plaintiff "over on my hands and knees."

The employee McMullan, witness for defendants, testified he saw the tractor-drawn wagons coming southwardly and noticed the second wagon was "out of line a fraction." McMullan called to the driver that "one of those wagons are out of line * * I didn't get any response * * * I hollered for Combs to get out of the way, see, because I knew he was in danger."

There was evidence that baggage wagons and express wagons, at different times, are "all stacked along different places (on the platform)," although there was a space "either farther north or south away from the midway where these wagons could have been * * * kept so that you could have kept the entire platform clear * *." But, when plaintiff was injured, although there were wagons left unattended along the platform, there was plenty of room for the wagon train to have been moved between the stationary wagon at which plaintiff was standing and the west side or edge of the concrete platform.

We shall state more of the evidence in the further course of the opinion.

■ (1) On voir dire, defendants' counsel was inquiring of the veniremen as to their qualifications as jurors. He asked them collectively and individually if they felt "in your own mind that every employe who is injured while in the service of his employer should be entitled to some compensation regardless of the circumstances under which the accident occurred?" The veniremen answered variously. Several of

them said they thought the employee should be paid; one thought so "to a certain extent"; another said that absent the employee's own fault, "I think he should (be paid)." In fact, we think the answers of these veniremen were generally those such as one would get severally from any group of intelligent laymen in answering questions restricted to quick personal views expressed without regard to the circumstances and law of a given case as these veniremen were restricted by questioning counsel.

As indicated, counsel was asking these questions strictly aside from any consideration of the circumstances of a case and aside from any issue of negligence under the law of any case, and aside from the circumstances and the court's instructions to be given on the law of a case. For instance, once during counsel's interrogation and the frequent colloquies, the trial judge interposed, "Now, we are not talking about Workmen's Compensation, we are talking about a judgment in the court here, where it is incumbent upon the employe to prove that the employer is negligent." Whereupon defendants' counsel said, "Well, your Honor, pardon me, that is not what I was talking about." On questions fairly put by plaintiff's counsel and the trial judge, the whole of the panel signified they could and would hear the evidence introduced in this case and arrive at a verdict on the evidence guided by the instructions given by the court. Any supposed implication that any venireman was of "deep-seated conscientious" belief that in all circumstances the employer should pay and regardless of any question of the employer's fault was self-drawn and injected by defendants' counsel in the course of his inquiry.

This court has thrice treated with like contentions where counsel had pursued the same technique in framing questions to veniremen on voir dire as here. See Timmerman v. Terminal R. R. Ass'n of St. Louis, 362 Mo. 280, 241 S.W.2d 477; Cleghorn v. Terminal R. Ass'n of St. Louis, Mo. Sup., 289 S.W.2d 13; Hughes v. Terminal

R. Ass'n of St. Louis, Mo.Sup., 296 S.W. 2d 59.

■■ We are not unaware that many do believe that an employee should be compensated for injury due to accident arising out of and in the course of his employment, irrespective of negligence. Such is the employer-employee philosophy of our Workmen's Compensation Law, section 287.010 et seq. RSMo 1949, V.A.M.S. This belief, shared by many, does not in and of itself disqualify one from jury service in a personal injury case based on negligence. Hughes v. Terminal R. Ass'n of St. Louis, supra. And the fact that a venireman's personal view of the soundness of the workmen's-compensation-law theory might not be changed by the court's instructions in a negligence case does not necessarily mean that a juror is not competent and qualified to fairly consider the evidence and honor the instructions of the court in arriving at a just verdict in a negligence case. The trial judge had an all-over view of the voir dire inquiry and was in a position to observe the attitude and demeanor of the veniremen in making their answers to these questions. Considering the restrictive manner of counsel's questioning; the veniremen's answers; and having examined the transcription of the whole voir dire inquiry, we think we should not rule that the trial court erred or manifestly abused its discretion in denying defendants' challenges for cause. Our opinion adverse to defendants in this contention is not affected by the fact that a juror, at the close of plaintiff's evidence, inquired of the trial court whether plaintiff had been reimbursed during the time "he has been off, or has the Compensation (been) paid him, hospitals or the doctors or anything? * * * We don't have anything to go on." Plaintiff had not made any showing of medical expenses, and the jury at that time, of course, had not been advised by instructions, which instructions necessarily awaited the conclusion of the trial. The juror was advised by the trial judge, without objection, that some of these matters would be covered by the court's instructions, and possibly clarified by arguments of counsel.

Surely, the situation here on voir dire is unlike those in Theobald v. St. Louis Transit Co., 191 Mo. 395, 90 S.W. 354, where a venireman several years before had been thrown off a streetcar and throughout ensuing years had entertained a prejudice against streetcar companies, and where another venireman had a general prejudice against defendant; or in Lee v. Baltimore Hotel Co., 345 Mo. 458, 136 S.W.2d 695, 127 A.L.R. 711, where a venireman used fraudulent means to get on a jury; or in Moore v. Middlewest Freightways, Inc., Mo.Sup., 266 S.W.2d 578, 579, where a venireman admitted prejudice against the "big fellow," and was promptly advised by plaintiff's counsel that defendant in that case was a "pretty big carrier."

■ But nothing here said is to be taken as eroding the fundamental propositions that a venireman is not the judge of his own qualifications; and that it is the high duty, among the highest of duties, of a trial judge to religiously endeavor to afford litigants a fair and impartial jury. See again Moore v. Middlewest Freightways, Inc., supra; and Lee v. Baltimore Hotel Co., supra.

■ (2) and (3) Plaintiff's verdict-directing Instruction No. 1 submitted and required the findings that "plaintiff was standing on a platform between railroad tracks Nos. 6 and 7 and close to a standing * * * baggage wagon located in approximately the center of said platform, and that at said time and place, an employee of the defendant Railway Express Agency * * * was operating a tractor, pulling a string of baggage wagons along and upon the said platform and toward and past said * * * baggage wagon, and if you further find that said * * * baggage wagon was in plain view of the driver of said tractor as he approached it, and that there was ample space on said platform along side of said * * * baggage wagon for the said tractor and baggage wagons it was pulling to have

passed said * * * baggage wagon without colliding with it and that said string of baggage wagons were pulled along side said * * * baggage wagon in such close proximity thereto that one of the baggage wagons being pulled by said tractor collided with said * * * baggage wagon, and if you further find that by reason of the foregoing facts and circumstances, * * * the defendant Railway Express Agency * * * was negligent and if you further find * * * from the evidence that as a direct and proximate result of such negligence the said * * * baggage wagon was caused to move and strike plaintiff and to injure him, * * *."

Plaintiff's verdict-directing Instruction No. 2 advised the jury of defendant Railroad Company's continuing nondelegable duty to exercise ordinary care to provide plaintiff with a reasonably safe place for work and submitted and required the findings that "plaintiff was performing the duties of his employment on behalf of the defendant at the Union Station * * * and that he was standing on the platform between railroad tracks Nos. 6 and 7 and close to an empty and unattended and unsecured baggage wagon located approximately in the center of said platform, and that this place constituted a place of work furnished to him by the defendant * * * Railroad Company, and * * * that the defendant * * * Railroad Company, allowed and permitted baggage wagons to be left unattended and unsecured on and along the aforesaid platform, and at the same time allowed and permitted tractors pulling other baggage wagons to be moved over and along the platform at a high and dangerous rate of speed, and that said tractors and the wagons which they were pulling were moved in such close proximity to the unattended and unsecured wagons that it was reasonably likely that such tractors or wagons would collide with such unattended wagons and thus and thereby cause injury to employees who might be working close to such * * * wagons, and if you further find and believe from all the aforesaid facts

and circumstances that the place of work * * * was dangerous and not reasonably safe, and that the defendant failed to exercise ordinary care in providing the plaintiff with a reasonably safe place to work and was negligent, and if you further find that a collision occurred between a baggage wagon being pulled by a tractor in a string of baggage wagons and between the empty baggage wagon by which plaintiff was standing, and that as a direct and proximate result of the collision that plaintiff was injured, and if you further find that the aforesaid negligence * * * of defendant * * * Railroad Company, played any part, even the slightest, in causing said collision, it would be your duty to return a verdict in favor of the plaintiff * * *."

It is said of Instruction No. 1 that it assumes negligence of defendant Express Agency's driver and permits a finding of negligence based on the mere fact of a collision; that it does not submit specific negligence such as a failure to look out or a fault in the maintenance of a wagon, neither does it require a finding that the driver knew that plaintiff was in any danger due to anything the driver might do, or was in a position of peril of which the driver could and should have known in time to have avoided injuring plaintiff; that the instruction is directly in conflict with Instruction No. 2 because it submits the negligence of defendant Express Agency's employee in driving the train of wagons against the stationary wagon and hypothesized the fact that such employee had "ample space" on the west side of the wagon to pass in safety, thus indicating that the platform was reasonably safe; whereaas, Instruction No. 2 submits negligence in failing to provide a reasonably safe place for work. It is said that if the space was ample the Instruction No. 2 is erroneous; and that if the space was not ample then Instruction No. 1 is erroneous.

Defendants' contention that the negligence of defendant Express Agency was assumed or a finding thereof permitted in Instruction No. 1 from the mere fact of a

collision must be analyzed with a regard for the required finding that Express Agency's employee drove the tractor and string of wagons "in such close proximity" to the stationary baggage wagon that one of the wagons pulled by the tractor collided with the stationary wagon causing it to move and strike plaintiff.

It has been said that in fact situations in which the doctrine of *res ipsa loquitur* is not applicable and a claim of specific negligence is sought to be stated the extent to which plaintiff must particularize depends upon the circumstances. There are some fact situations in which the act which results in injury or damage is so simple that the mere statement of the ultimate facts is nearly as specific an averment as can be expressed more particularly. See Chiodini v. Terminal R. Ass'n of St. Louis, Mo.App., 287 S.W.2d 357; Boulos v. Kansas City Public Service Co., 359 Mo. 763, 223 S.W.2d 446. There are numerous examples of specific negligence cases of this kind in which the pleadings alleged and the verdict-directing instructions, after describing plaintiff's position and environment, hypothesized little more than the ultimate facts relating to a simple act of commission, without reference to the conventional particularized acts of omission such as failure to stop, swerve, slacken, warn, maintain a lookout, control, and the like. See again Chiodini v. Terminal R. Ass'n of St. Louis, supra, and the cases therein cited, particularly Jones v. Central States Oil Co., 350 Mo. 91, 164 S.W.2d 914; State ex rel. Spears v. McCullen, 357 Mo. 686, 210 S.W.2d 68. In our case there was substantial evidence that plaintiff's position was on the platform near the stationary baggage wagon at a point where he was likely to be hurt if the stationary wagon were struck by the tractor train and where the wagon (and he) could have been seen by defendant Express Agency's driver; and that there was ample space on the platform for the tractor train to have passed the stationary wagon in safety. The submission of the negligence in the simple act of commission of driving the tractor train in such close proximity that one of the wagons of the train collided with the stationary wagon may be soundly considered, it would seem, a submission of specific negligence in this case. Thompson v. Keyes-Marshall Bros. Livery Co., 214 Mo. 487, 113 S.W. 1128; Jones v. Central States Oil Co., supra; Chiodini v. Terminal R. Ass'n of St. Louis, supra, and other cases therein cited.

It is true, as defendants say, that the instruction (No. 1) did not require the finding that the driver saw or by the exercise of care could and should have seen plaintiff. But the submission of the specific act of commission as negligence was inferentially an inclusion of such requirement. As stated, there was evidence tending to show the stationary wagon (and plaintiff) could have been seen, and the driver's duty in the exercise of due care to take such precautions as were commensurate to the reasonably potential dangers in the circumstances of the management of the tractor train reasonably included the precaution of observing the position of employees and others on the busy, rather narrow platform as the tractor train was moving along. Compare Trzecki v. St. Louis Public Service Co., Mo.Sup., 258 S.W.2d 676. Even so, the trial court at defendants' instance did direct that there could be no finding for plaintiff unless the jury believed from the evidence "that plaintiff was in a position of danger, that the tractor driver saw him there, or by the exercise of ordinary care could have seen him there, and that thereafter the tractor driver failed to use ordinary care to avoid injuring him, and that such failure * * * directly resulted in plaintiff's injury" in defendants' Instruction No. 5. Assuming the Instruction No. 5 was properly given in this case, there was no conflict between Instructions Nos. 1 and 5 which was prejudicial to defendants.

■ The submission of negligence of defendant Railroad Company in failing to

provide a reasonably safe place for work, and the submission of the negligent act of commission of defendant Express Agency in driving the wagon train into collision with the stationary wagon were not inconsistent or repugnant. See Timmerman v. Terminal R. R. Ass'n of St. Louis, supra, 362 Mo. 280, 241 S.W.2d 477, wherein the submission of negligence of defendant in failing to provide a safe place for work due to the narrow space between defendant's tracks and the submission of negligence in failing to warn plaintiff of an approaching locomotive were not erroneous as permitting recovery on repugnant theories, even in that case where both theories were submitted against the one defendant.

 Attending the argument that no evidence supported the hypothesis in Instruction No. 2 that defendant Railroad Company permitted tractors pulling baggage wagons to be moved over and along the platform "at a high and dangerous rate of speed"—we shall assume, but do not decide, that this hypothesis was necessary to the submission of the negligent failure to provide a safe place for work; and we now say that plaintiff testified that the train of wagons involved here was moving about ten miles per hour. A witness for defendants, having testified that the train of wagons was moving no more than two to four miles per hour, was asked if this latter speed was customary. The witness answered, "Some of them drive slow," this particular one "was one of them going real slow." Of course, the jury could refuse to give credence to the testimony of defendants' witness as to the rate of speed the particular train of wagons was moving, and accept plaintiff's testimony that it is moving about ten miles per hour, but the jury could accept the testimony of defendants' witness that the particular train of wagons was "going real slow"—moving about ten miles per hour—and consequently infer that trains of wagons were customarily allowed and permitted to move over and along the platform at a rate of

speed of ten miles per hour or more. We do not say as a matter of law that a train of baggage wagons moving at a speed of ten miles per hour along the platform whereupon were parked unattended stationary wagons and employees working as the evidence in this case tends to show would not be a high and dangerous rate of speed in such circumstances, although here, of course, speed was not submitted as specific negligence. It was merely hypothesized, perhaps gratuitously, as a circumstance in connection with other circumstances hypothesized and submitted.

Defendants' contention that Railroad Company could not be considered negligent in failing to provide a reasonably safe place of work because plaintiff's own testimony was to the effect that there was no defect in the concrete platform itself is ruled adversely to defendants. The platform, isolated from any consideration of its setting and use and the presence of wagons upon it, did not wholly comprise the place of work provided in this case. The recent case decided by this court, Moore v. Terminal R. Ass'n of St. Louis, Mo.Sup., 312 S.W.2d 769, was sufficiently analogous on its facts with respect to places of work provided in that case and here that we should not now say, especially in view of the reversal of the Moore case by the Supreme Court of the United States, 358 U.S. 31, 79 S.Ct. 2, 3 L.Ed.2d 25, that the fact that baggage wagons were parked along the platform and unattended when not in use and the other circumstances submitted in Instruction No. 2 and supported by evidence (from which a jury could infer that a collision between wagons was reasonably likely to occur) do not support the submission of defendant Railroad Company's negligence in failing to exercise ordinary care to provide plaintiff with a reasonably safe place to work. And without merit is defendants' contention that Instruction No. 2 was erroneous in authorizing a verdict for plaintiff against defendant Railroad Company if the submitted negligence of that defendant "played any part,

even the slightest" in causing the collision and injury. This language is identical to that used by the Supreme Court of the United States in Rogers v. Missouri Pac. R. Co., 352 U.S. 500, at page 506, 77 S.Ct. 443, at page 448, 1 L.Ed.2d 493, a F.E.L.A. case wherein that court said "the test of a jury case (under the statute) is simply whether the proofs justify with reason the conclusion that employer negligence played any part, *even the slightest,* in producing the injury or death for which damages are sought." (Our italics.)

We hold that the Instructions Nos. 1 and 2 were supported by evidence and were not prejudicially erroneous in submitting specific negligence; and from this ruling and our statement of facts showing that substantial evidence supported the hypotheses of the facts in these instructions it follows that the trial court did not err in submitting the issues of defendants' negligence to the jury.

Plaintiff's measure of damages Instruction No. 8 was as follows,

"The Court instructs the jury that, if you find in favor of the plaintiff under the evidence and the instructions of the Court, then you will award him such sum as you find and believe from the evidence will fairly and reasonably compensate him for the injuries * * * and damages * * * sustained by him on the occasion in question; and, in arriving at the amount * * * of your verdict, you may take into consideration and account:

"1. Such pain and suffering of body and mind * * * as you may find and believe from the evidence plaintiff has suffered by reason and on account of his injuries * * * sustained by him on the occasion in question.

"2. Such pain and suffering, of body and mind * * * as you may find and believe from the evidence plaintiff is reasonably certain to suffer in the future by reason and on account of the injuries * * *

"3. Such distinct permanent injuries * * * as you may find and believe from the evidence plaintiff will suffer by reason and on account of the injuries * * *.

"4. Such loss of earnings * * * as you may find and believe from the evidence plaintiff has suffered by reason and on account of the injuries * * * sustained by him on the occasion in question, and for such future loss of earnings * * * as you may find and believe from the evidence plaintiff is reasonably certain to suffer in the future by reason and on account of the injuries * * *."

There was substantial evidence that plaintiff suffered injury to the lower spine, and we do not follow defendants' initial contention that no evidence warrants a recovery for permanent injuries or future loss of earnings or future pain and suffering and that plaintiff's medical evidence "shows no more than a possibility or probability that such may be the case." The answers of plaintiff's medical witness on cross-examination to which defendants allude in their brief in support of this contention amount to an abstract discussion by the physician as to causes of pain, its severity, duration and variableness. Transposed upon plaintiff's shown injuries and resultant pain the doctor was meaning to say he could not state to a medical certainty the severity or intensity of future pain—"I mean that this man for the rest of his life will probably have some pain, how much I don't know, he may improve some, I don't know * * *." We shall more fully set out evidence of the nature and extent of plaintiff's injuries in connection with our examination of contention (7), infra. Defendants' principal complaint relating to Instruction No. 8 is that it authorized a double recovery by advising the jurors that they might take into consideration and account "distinct permanent

injuries," pain and suffering arising from injuries, and past and future "loss of earnings." But there was evidence of permanent injury to the spine and the evidence further showed a portion of a vertebra was excised. This was a permanent injury to plaintiff's person for which he was entitled to compensation, apart from pain and suffering and diminution of earning power, manifesting itself otherwise than by pain and suffering and diminution of earning power. Defendants' contention here is without merit. A like contention was particularly examined and rejected in Van Campen v. St. Louis-San Francisco Ry. Co., 358 Mo. 655, 216 S.W.2d 443.

■ (4) Plaintiff's counsel was cross-examining a claim agent of defendant Railroad Company—

"Q. Were you one of the people that was around checking Leonard Beard, if he had ever been hurt before, talking to his bosses about that? A. I was, sir.

"Q. And checking his neighbors out around there, is that correct? A. I was, sir.

"Q. Am I correct that his bosses said he had always been able to work and do his work and never had any trouble with his back?

"Mr. Sheppard (counsel for defendants): Now, your Honor, we object to that and ask that a mistrial be declared because that is wholly incompetent, it tends to prove no issue, it calls for hearsay, it is highly prejudicial and we think—

"The Court: I will sustain the objection and order that matter be stricken from the record and the jury is instructed to disregard it. Motion for mistrial overruled."

It is noted that the trial court promptly and correctly sustained counsel's objection to the last question asked and instructed the jury to disregard it, although the motion for a mistrial was overruled. The question clearly called for hearsay but pertained only to plaintiff's physical condition and ability to work before he was injured. We regard the effect of the question, unanswered and the jury instructed as here, as having but inconsequential effect on the issues of fact actually contested. Anyhow, defendants did not assign the failure to declare a mistrial in this connection was error or an abuse of discretion in their alternative after-trial motion.

■ (5) Defendants complain of the trial court's refusal of defendants' proffered Instruction B, which would have advised the jury that no finding could be for plaintiff on the ground that the driver of the tractor negligently failed to keep a lookout for the standing baggage wagon; of defendants' proffered Instruction C which would have advised the jury that under the law "the mere fact" that one of the baggage wagons being pulled by the tractor struck the standing baggage wagon does not, standing alone, warrant a finding in plaintiff's favor, "for the reason that the fact standing alone does not prove negligence on the part of anyone"; of the proffered Instruction D which would have instructed the jury there could be no finding for plaintiff if it were found that one of the wagons being pulled by the tractor failed to move in a straight line because it was defective, unless defendant Express Agency had actual or constructive knowledge of the defect; of the proffered Instruction F advising the jury that no verdict for plaintiff could be rendered on the ground that any one of the wagons involved was defective in any way even though it may have failed to move in a straight line; and of the proffered Instruction G which would have advised the jury that the law would not permit a finding in plaintiff's favor on any ground which is directly contradictory to his own evidence, and that, therefore, the law prohibited a finding for plaintiff on the ground that the platform was dangerous in any way, or that there was not sufficient room for the driver of the

tractor to pass the standing wagon with safety. These instructions or some of them were cautionary in nature or withdrawals of issues, and we see no abuse of the trial court's discretion in refusing to give them. It seems to us that the giving of all or one or some of them would have had a tendency to confuse the jury. And it may be that the giving of some of them in this case would have been error, but we shall not pause to examine them from the latter standpoint. Instructions are to advise the jurors upon the factual issues submitted to them, not to advise the jury upon matters that are not in issue. And we have also said that "mere fact" instructions are unnecessary; moreover, they may tend to confuse the jury by leading the jurors to believe they may not take into consideration some circumstance which, although in itself insufficient to sustain or refute an issue, is, nevertheless, to be properly taken into consideration by the jury together with other circumstances of a given case in deciding the issue. Rittershouse v. City of Springfield, Mo.Sup., 319 S.W.2d 518; Stumpf v. Panhandle Eastern Pipeline Co., 354 Mo. 208, 189 S.W.2d 223. We hold the trial court neither erred nor abused its discretion in refusing these instructions.

(6) In argument plaintiff's counsel alluded to written reports of what plaintiff had said on the day he was injured, which reports had been referred to by another witness in the course of the trial. Plaintiff's counsel said, "Is there any doubt in anybody's mind" if what plaintiff said in such reports on the day he was injured didn't correspond exactly "with what he said here in Court; if they didn't those reports would be here." Plaintiff's counsel also referred to the testimony that one of the wagons of the wagon train was "out of line a fraction." Defendants say there was no evidence that this very wagon collided with the wagon near which plaintiff was standing or that the driver of the tractor knew or should have known it was out of line. It is urged that, absent proof of negligence in this respect, the argument

was not warranted by the record, and was erroneous. However, plaintiff's counsel withdrew that portion of the argument, and the trial court also sustained defendants' objection to it. Defendants also complain of the reference by plaintiff's counsel of the fact that the driver of the tractor was not produced as a witness by defendants. Counsel for defendants objected on the ground that the driver's deposition was "on file," and that plaintiff's counsel could have used it. It is noted that defendants' counsel did not object on the ground that the witness was as equally available to plaintiff as to defendants. Plaintiff's counsel also said to the jury, "Is Leonard Beard an old shoe that they (defendants) can take him and use him and when he is not good, can't work, just throw him away? Is he a dog that you run down the street and run over him and say I am sorry?" The language of this last-quoted excerpt from argument we know was unworthy of counsel and seems to have been designed to incite the thought that plaintiff was being treated inhumanly by defendants; but upon defendants' objection the trial court ordered the reference—"comparing him to a dog"—stricken from the record and the jury was instructed to disregard it, although no ruling was made on defendants' request for a mistrial. Assuredly, if the trial court in the exercise of its discretion had granted defendants a new trial on the assigned ground of the impropriety of this last-quoted matter of argument and notwithstanding the trial court's ruling favorable to defendants on their objection at the time, we should readily affirm. However, the trial court did not declare a mistrial, and we somewhat defer to the trial court's view of the extent of the prejudicial effect of the argument; moreover, in their alternative after-trial motion defendants did not point out this or any of the other portions or matters of argument of which they complain here. In their alternative motion defendants assigned that during the course of arguments of plaintiff's counsel the trial court erred in refusing to rebuke counsel and declare a mistrial, when there were

objections made and requests for a mistrial "because of the character of the arguments hereinafter set out: (Pages 265 to 295 of this transcript)." The pages so parenthetically stated in the after-trial motion comprise the transcription of the entire arguments of counsel for both of the parties, plaintiff and defendants. We think this amounts to no assignment at all (Section 512.160 RSMo 1949, V.A.M.S.), in the sense of presenting for express decision any assigned error in argument. Although an allegation of error may be general in a motion for a new trial where definite objections or requests, with specific statements of ground therefor, were made during the trial (Supreme Court Rule 3.23, 42 V.A. M.S. 30), surely an allegation of error in a motion for a new trial pertaining to argument should at least direct the trial court's attention to the matters or subjects in argument of which the movant complains, rather than an allegation making reference to the whole of all arguments.

■ (7) Plaintiff, fifty-four years of age, had received an eighth-grade education. Before he was injured he had earned as a carman about $350 per month. His loss of wages at the time of trial was approximately $10,150. In early October, following the injury to his back in August, plaintiff was hospitalized at Little Rock for two weeks during which time he was given pills, slept on a board, and wore a brace. Upon discharge, he reported to the hospital periodically, but could not perform manual labor. The condition of his back became worse and more painful and he began experiencing pain in his right leg. His doctor could not alleviate the pain by conservative treatment, and January, 1956, plaintiff was sent to the Missouri Pacific Hospital at St. Louis where he remained for three weeks during which he was given electrical treatments. His condition did not improve. He entered Missouri Baptist Hospital in July, 1956, where surgery was performed, and was discharged after seven days. After surgery, plaintiff's condition improved somewhat, and plaintiff tried to work on

his 100-acre farm, but the activity put him "back in bed" because of the pain in his back and leg. Since then he has tried to work at different times, but not successfully, "because every time I do anything why it flares right back to the same thing, my back and leg kills me to work, where I can't get up the next day."

Plaintiff had had spondylolisthesis, that is, the fifth lumbar vertebra was slightly forward of its normal seat on the sacrum. In spondylolisthesis, "the lamina, which normally hooks on to the vertebra by bony union * * * is hooked on to the body (of the vertebra) by fibrous connective tissue, not bone." Following injury, the fibrous tissue and lamina became movable with consequent impingement on the nerve root, and will "cause pain, definitely." By operative surgery the fibrous neural arch, including the small detached lamina, was excised and the impingement upon the nerves to some extent decompressed. Plaintiff has gained the maximum of improvement, but has a permanent defect in his back—"such pains and aches as he has, I believe he will continue to have them." These conditions resulted from his injury. He will be able to work, but not "heavy manual labor involving his back, which most manual labor does"—such as does the manual labor of lifting, bending and stooping in performing the duties of a carman.

In support of their contention that the award, after remittitur in the trial court, $48,000, is excessive, defendants have cited Kiger v. Terminal R. Ass'n of St. Louis, Mo.Sup., 311 S.W.2d 5, where a carman, 30 years old, had injuries to the soft tissues of the neck and low back and contusions of both legs and the left knee. He was hospitalized during two periods of time. The medical evidence was insufficient in supporting the conclusion that plaintiff Kiger had sustained a ruptured disc. He returned to work four months after his injury with $1,440 loss of wages. The jury's award of $30,000 was reduced to $20,000. On the other hand, plaintiff relies on Lange v. Kansas City Southern Ry. Co.,

Mo.Sup., 290 S.W.2d 71, in which case an award of $76,000 was reduced in the trial court to $50,000. Plaintiff Lange an "extra gang" laborer 30 years old, suffered a herniated disc with impingement on nerves in the area, with resultant inability, considering his limited education, to successfully engage in any kind of work. His injury left him "bent over" with a lurching walk, affliction of speech, and marked change of appearance. We were constrained to hold that the trial court in the Lange case did not abuse its discretion in limiting the remittitur to $26,000. We also have in mind Van Norman v. Illinois Central Railroad Co., Mo.Sup., 320 S.W.2d 512, where plaintiff, 28 years of age, a member of a "paint crew" suffered three herniated discs which were removed surgically with ensuing marked limitation of back movement and a decided limp. Loss of wages at the time of trial was approximately $5,-400. Van Norman was permanently disabled from manual labor and permanently disabled from any regular employment. The award was reduced to $47,400. These cases are those of plaintiffs much younger than plaintiff Beard. It is quite clear that plaintiff Beard's spine injury is permanent in nature and definitely more disabling than was plaintiff Kiger's injury to soft tissues and we have noted that plaintiff Kiger returned to his regular employment four months after injury. It is also quite clear to us that the injury to Van Norman was more serious and disabling and more painful than those of plaintiff Beard, although Beard had lost substantially more in wages at the time of trial than had Van Norman. The respective plaintiffs' injuries, other than those of Kiger, were of somewhat like nature but more grave and painful than are Beard's. Reference is also made to amounts of the awards in Hayes v. Wabash R. Co., 1950, 360 Mo. 1223, 233 S.W.2d 12; Dempsey v. Thompson, 1952, 363 Mo. 339, 251 S.W.2d 42; and Votrain v. Illinois Terminal R. Co., 1954, Mo.Sup., 268 S.W.2d 838, cited in the Van Norman opinion. Having regard for the factors to be considered in determining the question of excessiveness of an award (Young v. Terminal R. R. Ass'n of St. Louis, Mo.Sup., 192 S.W.2d 402), and also recognizing that the trial court has passed upon the question in ordering a remittitur (Schaefer v. Transamerican Freight Lines, Mo.Sup., 173 S.W. 2d 20), we have the opinion the award in this case, after the remittitur in the trial court, should be held to be yet excessive in the amount of $10,000.

If within fifteen days plaintiff enters a remittitur of $10,000 the judgment shall stand in the amount of $38,000, as of the date of original rendition; otherwise, the judgment should be reversed and the cause remanded.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C. is adopted as the opinion of the court.

All of the Judges concur.